IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLDE YANKEE, INC.<br>      Plaintiff<br><br>v.<br><br>MID-ATLANTIC BARGE SERVICE, LLC<br>      Defendant. | :<br>:<br>: Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>: |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, Olde Yankee, Inc. brings this complaint for declaratory judgment against defendant, Mid-Atlantic Barge Service, LLC., and avers as follows:

### Parties, jurisdiction, and venue.

1. Plaintiff is Olde Yankee, Inc. ("Olde Yankee") a Pennsylvania corporation with its principal place of business located at 3301 South 61st Street, Philadelphia, PA 19153.

2. Defendant is Mid-Atlantic Barge Service, LLC ("Mid-Atlantic") a Pennsylvania limited liability company with a registered address of 2595 Interstate Drive, #103, Harrisburg, PA 17110, and a principal place of business located at 1601 Locust Street, Unit 200, Philadelphia, PA 19103. Mid-Atlantic regularly conducts business in the city of Philadelphia.

3. This Court has jurisdiction over this action under Article III of the United States Constitution, U.S. Const. Art. III, § 2, cl. 1, and 28 U.S.C. § 1333 because it is an admiralty or maritime case that involves the interpretation of a

charter contract for a barge which is related to maritime commerce and directly relates to a vessel engaged in maritime commerce. *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 24, (2004); *Compass Marine Corp. v. Calore Rigging Co.*, 716 F.Supp. 176, 180 (E.D. Pa. 1989)("A dispute arising out of a charter agreement of a vessel in service is cognizable under the admiralty and maritime jurisdiction of the federal courts."

4. The Court also has discretion to exercise jurisdiction under 28 U.S.C. § 2201(a).

5. This Court has personal jurisdiction over defendant because defendant conducts systematic and continuous business in this District.

6. Venue is proper in this district under traditional admiralty rules because defendant is currently found in this district and the vessel that is the subject matter of this dispute is also found in this district. *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F.Supp.3d 501, 506 (E.D. Pa. 2015)("An *in personam* admiralty action can be brought against a corporation in any United States district court that can obtain personal jurisdiction over the corporation.")

## Factual Background

### A. The charter agreements for barges MSJ102 and MSJ107.

7. On or about March 8, 2019, Olde Yankee and Mid-Atlantic entered into two separate written demise charter agreements whereby Mid-Atlantic agreed to lease barges MSJ102 and MSJ107, official numbers 647808 and 647806, to Olde Yankee in exchange from payment by Olde Yankee of $12,000 per month for each barge.

8. The written charter agreements are referred to as the Charter Agreements and barges MSJ102 and MSJ 107 are referred to as the "Barges." Copies of the Charter Agreements are attached at Exhibits "A" and "B," respectively.

9. Under the Charter Agreements, the initial term expired on February 29, 2020.

10. On March 31, 2019, the parties entered into amendments to the Charter Agreements whereby the charter term was extended to February 28, 2021.

11. Accordingly, the Charter Agreements are set to expire on February 28, 2021.

12. At the inception of the Charter Agreements, a third-party marine surveyor, Meyerrose & Co., conducted an "on-hire" survey of the Barges to document the condition of the barges at the time Mid-Atlantic delivered them to Olde Yankee.

13. Under paragraph 10 of the Charter Agreements, Olde Yankee is required to re-deliver the Barges to Mid-Atlantic on February 28, 2021 "in as good as a condition as indicated on the On-Hire Survey." Charter Agreements, ¶ 10.

14. Additionally, Olde Yankee had a duty under the Charter Agreements to maintain the Barges "in the same good order and condition as they were when delivered to Charterer." *Id.*, ¶ 11.

15. Under paragraph 12 of the Charter Agreements, the third-party surveyor, Meyerrose & Co. ("Meyerrose"), is required to prepare an "off-hire" survey, which is to detail the condition of the Barges in immediately before re-delivery. *Id.*, ¶ 12.

16. The off-hire survey is to document the condition of the Barges and to include a description of any differences in the condition of the Barges from the on-hire survey Meyerrose prepared when the Barges were initially delivered to Olde Yankee. *Id.*, ¶ 10.

17. Under the Charter Agreements, Olde Yankee would be responsible for making all repairs identified on the off-hire survey that Meyerrose determined were necessary to restore the Barges to the same condition as they were at the time of delivery. *Id.*

18. If Olde Yankee does not make the repairs recommended by the off-hire survey report, Olde Yankee shall continue to pay the monthly rent for the Barges to Mid-Atlantic until such time as the repairs are made. *Id.*, ¶¶ 10, 11.

### B. The Interim and Off-Hire Surveys

### Barge MSJ102

19. On March 5, 2020, Meyerrose prepared an Interim Survey Report for Barge MSJ102 (the "Interim Survey"), which documents the difference in condition of the barge from found in the initial on-hire survey. A copy of the March 5, 2020 report is attached at Exhibit "C."

20. The Interim Survey recommends approximately thirty-nine repairs.

21. The Interim Survey does not indicate that the Barges were damaged while aground, overladed to drafts exceeding the maximum permissible draft of 9 feet 6 inches, nor that the sand on the Barges was improperly loaded, stowed, or discharged.

22. The Interim Survey does not recommend that the Barges be dry docked.

23. Olde Yankee has made all thirty-nine repairs Meyerrose recommended.

24. In anticipation of the termination of the Charter Agreements, on August 1, 2020, Meyerrose prepared a Preliminary Off-Hire Survey Report #1 ("Barge 102 Report #1""). A copy of the Barge 102 Report #1 is attached at Exhibit "D."

25. That report identifies the conditions of barge MSJ102 that differ from the conditions found in the on-hire survey Meyerrose prepared when MSJ102 was delivered to Olde Yankee and recommends repairs that need to be made to address those differences.

26. On October 5, 2020, Meyerrose prepared Preliminary Off-Hire Survey Report #2 ("Barge 102 Report #2"). A copy of Barge 102 Report #2 is attached at Exhibit "E."

27. Barge 102 Report #2 identifies those items identified still needing repair that were identified on Report #1, i.e. items that Olde Yankee had **not yet** repaired, and any new repairs caused by Olde Yankee's use of Barge 102 since Barge 102 Report #1 was prepared.

28. On November 10, 2020, Meyerrose prepared Preliminary Off-Hire Survey Report #3 ("Barge 102 Report #3"). A copy of Preliminary Off Hire Survey #3 is attached at Exhibit "F."

29. That report identifies the items that differ from Reports #1 and #2 that Olde Yankee has still needed to complete.

30. Barge 102 Report #3 identifies only six items that Olde Yankee still needed to repair in order to return Barge 102 to the same condition as it was when it was delivered to Olde Yankee.

31. Olde Yankee has repaired all six items.

32. None of the reports identify damage caused by Olde Yankee improperly loading the barge, grounding the barge, or overloading the barge.

33. Since August 2020, Olde Yankee has not used the Barge MSJ102 and it has remained securely docked at Olde Yankee's Philadelphia facility.

34. Olde Yankee is ready, willing, and able to return Barge 102 to Mid-Atlantic.

35. Meyerrose has not recommended that Olde Yankee make any additional repairs to Barge 102 to bring Barge 102 back to the same condition as it was when it was delivered to Olde Yankee.

36. Barge 102 is in the same condition as it was when delivered to Olde Yankee.

### Barge MSJ107

37. On November 7, 2019, Meyerrose completed an Interim Survey Report of Barge MSJ107 ("Barge 107 Interim Survey"). A copy of that interim survey report is attached at Exhibit "G."

38. That report recommended that approximately twenty-nine repairs be made to Barge MSJ107 that consisted mainly of cleaning out sand and repairing cracks with welds.

39. The Barge 107 Interim Report does not recommend that MSJ107 be dry docked.

40. The Barge 107 Interim Report also does not indicate that Olde Yankee has caused damage to the barge by improper loading of sand, overloading of the barge, or grounding of the barge.

41. Olde Yankee completed all those repairs Meyerrose recommended.

42. In anticipation of the termination of the Charter Agreements, Meyerrose prepared a Preliminary Off-Hire Survey Report #1 dated October 5, 2020 for Barge MSJ 107 ("Barge 107 Report #1"). A copy of the October 5, 2020 report is attached at Exhibit "H."

43. That report identifies the conditions of barge MSJ107 that differ from the conditions found in the on-hire survey Meyerrose prepared when MSJ107 was delivered to Olde Yankee and recommends repairs that need to be made to address those differences.

44. On November 10, 2020, Meyerrose prepared Preliminary Off-Hire Survey Report #2 ("Barge 107 Report #2"). A copy for Barge 107 Report #2 is attached at Exhibit "I."

45. That report identifies the items from Report #1 that Olde Yankee still needed to repair to place the barge in the same condition as it was when delivered to Olde Yankee.

46. Report #2 identifies five items that Olde Yankee had not yet repaired as of the date of that report.

47. Neither Report #1 nor Report #2 identify damage caused by Olde Yankee improperly loading the barge, grounding the barge, or overloading the barge.

48. Olde Yankee has since repaired those five items.

49. Since October 2020, Olde Yankee has not used Barge MSJ107 and it has remained securely docked at Olde Yankee's Philadelphia facility.

50. Meyerrose has not recommended that Olde Yankee make any additional repairs to Barge 107 to restore it to the same condition as it was when delivered to Olde Yankee.

51. Barge 107 is in the same condition as it was when delivered to Olde Yankee.

### C. Mid-Atlantic's demands that Olde Yankee Dry Dock the Barges

52. Olde Yankee has fully paid all amounts due under the Charter Agreements through February 28, 2021, has made all repairs recommended by Meyerrose, and is ready, willing, and able to re-deliver the Barges to Mid-Atlantic.

53. However, Mid-Atlantic is refusing to accept re-delivery of the Barges unless Olde Yankee pays for an expensive dry dock of the Barges and repair of any damage discovered to the hulls of the Barges during dry dock.

54. Dry docking is a process by which a water borne vessel is removed from the water and allowed to rest on platforms so that the portions of the vessel that typical lie below the waterline can be inspected and, if necessary, repaired.

55. In this matter, the cost to dry dock the Barges is approximately $40,000.

56. The Charter Agreements do not impose a duty on Olde Yankee to dry dock the Barges as a condition of re-delivering them to Mid-Atlantic.

57. Moreover, Meyerrose has never recommended that the Barges be dry docked for the purpose of inspecting them for damage.

58. Rather, the Meyerrose reports make clear that it is Mid-Atlantic that is demanding dry docking of the Barges because Meyerrose believes that the barges have been damaged below the waterline.

59. Meyerrose also makes clear that it takes no position of the veracity of Mid-Atlantic's opinions.

60. Importantly, the condition of the hulls of the Barges that lie below the waterline is not referenced in Meyerrose's on-hire report.

61. Olde Yankee is only responsible to repair conditions that exist at the time of re-delivery that differ from the condition at the time of the on-hire report.

62. Therefore, Olde Yankee would not be responsible for any conditions that Mid-Atlantic finds during dry docking because there is no way to determine if those conditions existed at the time of delivery identified in the Meyerrose on-hire report.

63. Moreover, upon information and belief, this is not the first-time defendant has demanded that a lessor of the Barges, like Olde Yankee, commit to expensive dry docking and repairs as a condition of it accepting return of the Barges.

64. Upon information and belief, Mid-Atlantic demanded that the previous lessor of the Barges, Vulcan Materials Company, also dry dock the Barges.

65. Upon information and belief, Vulcan ultimately paid Mid-Atlantic at least $225,000 to dry dock the Barges and make repairs.

66. But, upon information and belief, Mid-Atlantic never dry docked the Barges nor made repairs before leasing them to Olde Yankee.

67. If discovery reveals that this occurred, Olde Yankee reserves the right to amend this complaint to bring additional claims.

## COUNT I
### Declaratory Judgment

68. Olde Yankee incorporates the previous paragraphs by reference.

69. Olde Yankee is not in default of its obligations under the Charter Agreements.

70. To the contrary, Olde Yankee has complied with its obligations under the Charter Agreements, including making all repairs to the Barges and paying the entire rent owed through the completion of the term.

71. Mid-Atlantic is demanding Olde Yankee perform obligations, namely dry docking, that it is not required to perform under the Charter Agreements.

72. Mid-Atlantic is demanding that Olde Yankee make repairs that Meyerrose has not recommend.

73. Mid-Atlantic's refusal to accept re-delivery of the Barges, its demand that Olde Yankee pay rent after the termination of the Charter Agreement term, and demand that Olde Yankee perform obligations not contained in the Charter Agreements presents an actual, substantial, and justifiable controversy.

WHEREFORE, Plaintiff, Olde Yankee, requests that this Court enter a declaratory judgment as follows:

(a) Declaring that Olde Yankee is not in default of the Charter Agreements;

(b) Declaring that Olde Yankee is not in breach of the Charter Agreements;

(c) Declaring that Olde Yankee has complied with its duties under the Charter Agreements;

(d) Declaring that Olde Yankee has no duty to dry dock the Barges under the Charter Agreements;

(e) Declaring that Olde Yankee has no duty to continue to pay rent to Mid-Atlantic after February 28, 2021; and

(f) Granting such other further relief as the Court deems just, proper, or equitable.

Respectfully submitted,

By: */s/ Walter S. Zimolong, Esq.*
Walter S. Zimolong, Esquire
Zimolong, LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842
wally@zimolonglaw.com
*Attorneys for Plaintiff*

Dated: January 12, 2021