IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLDE YANKEE INC.<br>**Plaintiff,**<br>v.<br>MID-ATLANTIC BARGE SERVICE, LLC<br>**Defendant.** | CIVIL ACTION NO. 21-153 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                              **March 10, 2023**

Plaintiff/Counterclaim Defendant Olde Yankee, Inc. brings this action against Defendant/Counterclaim Plaintiff Mid-Atlantic Barge Service, LLC, seeking a declaratory judgment that Olde Yankee has complied with its obligations under certain agreements between the parties. Mid-Atlantic asserts counterclaims against Olde Yankee for breach of contract, negligence, and attorneys' fees. Olde Yankee now moves for partial summary judgment as to Mid-Atlantic's negligence claim. For the reasons discussed below, the motion is denied.

### I.     BACKGROUND

Mid-Atlantic is a barge leasing business and owns six barges, including barges MSJ-102 and MSJ-107.[1] On March 8, 2019 and March 31, 2019, Olde Yankee and Mid-Atlantic executed written Demise charters for barges MSJ-107 and MSJ-102, respectively (the "Demise Charters").[2] The terms and conditions of the Demise Charters are identical.[3] Mid-Atlantic asserts that Olde Yankee caused damage to both barges and that it failed to repair the damages at the end

---

[1] Statement of Undisputed Material Facts "SUMF" [Doc. No. 21] ¶¶ 1-2.

[2] SUMF [Doc. No. 21] ¶¶ 3, 4.

[3] SUMF [Doc. No. 21] ¶ 5.

of the terms of the Demise Charters.[4] Mid-Atlantic asserts three counterclaims against Olde Yankee for breach of contract, negligence, and attorneys' fees.[5]

Mid-Atlantic's breach of contract and negligence claims seek identical damages.[6] Specifically, Mid-Atlantic seeks:

> [S]ignificant monetary losses and damages in an amount to be fully determined, including but not limited to the cost of dry docking the Barges, the surveying fees for a Final Off-Hire Survey, the cost of conducting permanent repairs of known damage to the bottom plating of the Barges and any additional damages discovered during the Off- Hire Survey, consequential losses resulting from the inability to re-charter the Barges to other parties until the dry docking and repairs are completed and attorney's fees and legal costs to enforce its rights under the Demise Charters.[7]

Mid-Atlantic seeks purely economic damages through its negligence claim.[8]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment on a claim or part of a claim is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] The court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[10] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[11] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[12] "If

---

[4] SUMF [Doc. No. 21] ¶ 6.

[5] SUMF [Doc. No. 21] ¶ 7.

[6] SUMF [Doc. No. 21] ¶ 8.

[7] SUMF [Doc. No. 21] ¶ 9.

[8] SUMF [Doc. No. 21] ¶ 10.

[9] Fed. R. Civ. P. 56(a).

[10] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[11] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citations omitted).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13] If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[14]

### III. DISCUSSION

#### A. Gist of the Action Doctrine

Olde Yankee asserts that "the relationship between Mid-Atlantic and Olde Yankee is firmly rooted in" the Demise Charters and "[w]ithout those agreements there would be no relationship between the parties."[15] Olde Yankee argues that Mid-Atlantic "just recasts its breach of contract claim as a negligence claim" and the alleged duties of care are all "grounded in" and "flow from" the Demise Charters.[16] As such, Olde Yankee asserts that this case "fits squarely"[17] within Pennsylvania's gist of the action doctrine, which limits claims "to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."[18]

Mid-Atlantic asserts that this dispute is governed by federal maritime law. Mid-Atlantic argues that federal maritime law recognizes an independent cause of action in tort against a Demise charterer, and thus Pennsylvania's gist of the action doctrine is inapplicable because it conflicts with federal maritime law. In the alternative, Mid-Atlantic argues that the Pennsylvania

---

[13] *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 249-50 (1986) (internal citations omitted).

[14] *Wisniewski v. Johns–Manville Corp*., 812 F.2d 81, 83 (3d Cir. 1987) (citations omitted).

[15] Olde Yankee Br. Supp. Mot. Partial Summ. J. [Doc. No. 21] at 6.

[16] *Id.* at 7.

[17] *Id.* at 8.

[18] *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007).

3

Supreme Court has held that a legal duty grounded in negligence, which exists independently of a contract, is not barred by the gist of the action doctrine.

This Court has jurisdiction under 28 U.S.C. § 1333, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This is "an admiralty or maritime case that involves interpretation of a charter contract for a barge which is related to maritime commerce and directly relates to a vessel engaged in maritime commerce."[19] "With admiralty jurisdiction . . . comes the application of substantive admiralty law."[20] Federal courts recognize the need for harmony and uniformity in maritime law.[21] "Even though Pennsylvania courts have formally recognized [the gist of the action doctrine], the same cannot be said for federal courts sitting in admiralty."[22]

As the Court has jurisdiction under 28 U.S.C. § 1332, the Court applies substantive admiralty law.[23] Olde Yankee has not provided a basis as to why Pennsylvania law should be

---

[19] Compl. [Doc. No. 1] ¶ 3.

[20] *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996) (internal quotations and citation omitted); *see also Blank River Servs., Inc. v. Towline River Serv., Inc.*, 395 F. Supp. 3d 589, 604 (W.D. Pa. 2019) (quoting *The Duptra Grp. v. Batterton*, 139 S. C.t 2275, 2278 (2019)) ("Federal courts sitting in admiralty apply the general maritime law as developed by the federal courts proceeding 'in the manner of [ ] common law court[s].'").

[21] *See, e.g.*, *Boldt v. Taylor*, No. 21-3204, 2022 WL 2803105, at *2 (D.N.J. July 18, 2022) (quoting *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 Fed.App'x. 835, 836 (3d Cir. 2002)) ("A federal court sitting in admiralty jurisdiction may rely on state law as long as the law in question 'does not conflict with maritime law.'").

[22] *Blank River Servs.*, 395 F. Supp. 3d at 604 (internal citations omitted) (holding that Pennsylvania law, and thus the gist of action doctrine, did not apply in an admiralty case in which party asserted breach of contract and tort claims); *see Crown Bay Marina, L.P. v. Subbase Drydock, Inc.*, No. 18-68, 2020 WL 6120152, at *9 (D.V.I. Oct. 16, 2020) (citation omitted) (noting that "neither the Third Circuit nor any other circuit appears to have held that the [gist of the action] doctrine may be applied by federal courts sitting in admiralty" and deferring ruling on the party's motion for summary judgment on the negligence claim, as the parties did not address the issue of whether the gist of the action doctrine applied).

[23] *Yamaha*, 516 U.S. at 199; *see also Kulesza v. Scout Boats, Inc.*, No. 99-3488, 2000 WL 1201457, at *2 (E.D. Pa. Aug. 8, 2000) ("[O]nce a claim falls within the bounds of admiralty jurisdiction, substantive admiralty law

applied in a maritime dispute to limit liability. Further, although the Demise Charters state that they are "governed by the general maritime law of the United States or, if and to the extent that there is no applicable general maritime rule of law, then and only then by the laws of the Commonwealth of Pennsylvania,"[24] this provision does not alter the choice-of-law analysis. First, this provision provides that, at most, Pennsylvania law may be applied to contractual interpretation in certain circumstances, and second, Olde Yankee does not identify a gap in maritime law requiring the supplementation of Pennsylvania law.[25] Accordingly, the gist of the action doctrine is not a basis to grant Olde Yankee's motion for partial summary judgment.

### B. Economic Loss Doctrine

Olde Yankee next argues that Mid-Atlantic's negligence claim is barred by Pennsylvania's economic loss doctrine, which provides that "no cause of action exists for negligence that causes only economic loss."[26] Olde Yankee avers that Mid-Atlantic's losses are purely economic and any damages result from alleged contractual duties owed. In response, Mid-Atlantic argues that "[f]ederal maritime law has its own rule regarding the recovery of pure economic losses which takes precedence and precludes the application of state law."[27] Mid-Atlantic asserts that the doctrine established in *Robins Dry Dock & Repair Company v. Flint*,[28] and not the economic loss doctrine, applies here. In *Robins Dry Dock*, the United States Supreme Court held that a party must have suffered physical damage to property that it owns in order to

---

applies to govern the claim, regardless of whether or not admiralty jurisdiction was actually invoked by the complaint.").

[24] Compl. Ex. A [Doc. No. 1-3] ¶ 23; Ex. B [Doc. No. 1-4] ¶ 23.

[25] *See Blank River Servs.*, 395 F. Supp. 3d at 604-05.

[26] *Aikens v. Baltimore and Ohio R. Co.*, 501 A.2d 277, 279 (Pa. Super. Ct. 1985).

[27] Mid-Atlantic Br. Opp. Mot. Partial Summ. J. [Doc. No. 22] at 5.

[28] 275 U.S. 303 (1927).

recover damages for economic loss.[29] In the alternative, Mid-Atlantic argues that the economic loss doctrine does not bar its negligence claim because it also requires physical injury or property damage—here, the physical damage sustained by the barges is at the heart of this case.

As explained above, the Court applies substantive admiralty law and not Pennsylvania law. "The standard formulation of the *Robins Dry Dock* rule is that 'physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort.'"[30] There must be a tangible connection between the defendant's actions and the damages in order to recover for economic losses.[31] This case arises from physical damage sustained by the barges, allegedly due to Olde Yankee's handling of the barges. Accordingly, the *Robins Dry Dock* rule does not bar Mid-Atlantic's negligence claim seeking economic damages.

## IV. CONCLUSION

For the reasons stated above, Olde Yankee's motion for partial summary judgment as to Mid-Atlantic's negligence claim is denied. An appropriate order will follow.

---

[29] *Id.* at 308-309.

[30] *Compl. of Carlson*, No. 88-9882, 1989 WL 105177, at *1 (E.D. Pa. Sept. 7, 1989) (quoting *Holt Hauling & Warehousing Systems, Inc. v. M/V Ming Joy*, 614 F. Supp. 890, 896 (E.D. Pa. 1985)).

[31] *Getty Refining and Marketing Co. v. MT FADI B*, 766 F.2d 829, 833 (3d Cir. 1985) ("[W]e will adhere to the rule defined by Justice Holmes in *Robins* . . . that where negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover for the loss of the financial benefits of a contract or prospective trade.").